IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olaf Peter Juda,<br><br>　　　　Petitioner,<br><br>vs.<br><br>Craig Apker,<br><br>　　　　Respondent. | No. CV 07-1982-JAT-PHX (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Petitioner's *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 (Doc. No. 3) (hereinafter "Amended Petition"). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons the Magistrate Judge recommends that the District Court deny the Petition.

**I.　FACTUAL & PROCEDURAL BACKGROUND**

Petitioner Olaf Peter Juda ("Petitioner") is an inmate confined at the Federal Correctional Institute in Phoenix, Arizona, serving a sentence imposed on July 2, 1993 in the Northern District of California for: (1) Conspiracy to Possess and Possession of a Controlled Substance Aboard a Vessel with Intent to Distribute in violation of 46 U.S.C. §§ 1903(A),

(J); and (2) Arson on the High Seas in violation of 18 U.S.C. §81. (Answer, p.2) Petitioner was sentenced to 262 months of imprisonment, 5 years of supervised release, and a $150 special assessment. (Id.) From December 4, 1998 until his transfer to Phoenix on July 6, 2007, Petitioner was at Taft Correctional Institution ("TCI").[1]  (Id.)  The events at issue occurred at TCI.

Petitioner alleges that he was deprived of 14[2] days of good time credit and seeks expungement of his disciplinary record with regard to the loss of those credits. Petitioner alleges that he was wrongfully issued an incident report leading to the loss of good time credits because the incident at issue had been resolved informally. He also alleges that prison officials failed to comply with the applicable regulations regarding the incident report and investigation.[3]

The events giving rise to the disciplinary action began on March 24, 2007 when Officer Benavides, while conducting a random locker search of Petitioner's cubicle, discovered an "electrical board and a battery pack hidden inside...[Petitioner's] dirty laundry bag."[4] (Answer, Ex.3, Att.A, (Doc. No. 17-2 p.10)) Petitioner told Officer Benavides that he used the device to block radio traffic at night in his dormitory. (Id. *See also* Amended Petition, p.1) Petitioner maintains herein that he had repeatedly requested staff to keep the dormitories quiet at night by silencing inmates' "noisy radios..." which were "openly violating regulations which prohibited the loud playing of music." (Amended, Petition, p.2)

---

[1] TCI is owned by the Bureau of Prisons but is staffed and operated by a private contractor. *(See* Answer, pp.2-3 and Ex. 3)

[2] Petitioner alleges that he was punished by losing "14 days 'good time'" credit. (Amended Petition, p.2) The record reflects that 13 days of good time credit were disallowed. (Answer, p.3 & Ex. 3, Att. A (Doc. No. 17-2, p.4))

[3] Petitioner alleged additional causes of action in his Amended Petition. However, on January 14, 2008, the Court dismissed all claims except Petitioner's allegation "that he was deprived of good time credits...." (Doc.No. 7, p.5)

[4] Photos of the device are at Respondent's Answer, Ex. 3, Att.A (Doc. No. 17-2, pp.7-8)

Because staff ignored his requests, Petitioner obtained "from the maintenance department a small FM transmitter that normally was placed inside televisions such that inmates could listen to the television with their radios. If the transmitter was turned on top of a FM music station, it would temporarily silence the radio." (Id.)

Officer Benavidas confiscated the device and took Petitioner to Lieutenant Hammons. (Answer, Ex. 3, Att.A (Doc. No. 17-2, pp.9-10)) Upon questioning by Lieutenant Hammons, Petitioner demonstrated how the device could block a radio signal playing over Lieutenant Hammons' computer. (Id. at p.9) Petitioner explained that he used the device to block signals on other inmates' radios so he could sleep. (Id.) He said he had been using the device for approximately 4 months. (Id.) Lieutenant Hammons confiscated the device. (Id. at p.10); Amended Petition, p.2) At that time, no Incident Report was issued.

Petitioner asserts that Lieutenant Hammons "simply confiscated the device without taking any further action.[5] However, two days later when Warden Wrigley found out about the device, he went hysterical thinking that Petitioner had created either a jamming device that could interfere with the Institution's communications, or that it could be made into a Cell Phone. Petitioner was immediately placed into segregation for investigation...." (Amended Petition, p.2)

The record reflects that on March 26, 2007, "Lieutenant Dunham issued a detention order, alleging a pending investigation of a *criminal act*." (Answer, Ex. 3, Att.A (Doc.No. 17-2, p.11; *see also* Answer, Ex. 5 (Doc.No. 16-6, p.1))(emphasis in original). Respondent submits the declaration of Curtis Logan, Disciplinary Hearing Officer (hereinafter "DHO") at TCI. (Answer, Ex. 3) According to DHO Logan:

> A radio signal jammer had never been found at TCI before and there was some concern that such a device might be used to assist inmates in escaping the institution by jamming radio signals. The use of radios in a correctional

---

[5]Elsewhere in the record, Petitioner stated that after he demonstrated the device for Lieutenant Hammons, the Lieutenant "realized what it was and knew that it presented no danger to the institution. He confiscated the transmitter, and said that he would take no other actions against me." (Answer, Ex. 4 (Doc.No. 16-5, p.3))

- 3 -

>institution is essential for communication purposes. Radios contribute to the safety of the staff and inmates in a prison. A disruption in staff radio signals could put staff and inmates in danger. A disruption of inmates [sic] personal radio signals could easily lead to confrontations between the inmates whose radios were being jammed, and the inmate with the radio jamming device.

(Id. at ¶6) Ultimately, the decision was made not to refer the matter to the U.S. Attorney's Office for prosecution. (Answer, p.3 & Ex. 5 (Doc. No. 16-6, p.1)) Thereafter, on April 13, 2007, an Incident Report was issued by SIS K. Sy charging Petitioner with violation of "Code 199–Conduct which disrupts or interferes with the security or orderly running of the institution, most like 108, possession, manufacture, or introduction of a hazardous tool." (Answer, Ex. 3, Att. A, (Doc.No. 17-2, p.5)) In pertinent part, SIS Sy stated in his report that staff became aware that Petitioner possessed the device on March 24, 2007 and Petitioner admitted he received the transmitter from an unnamed inmate four months earlier and that he used the transmitter to jam other inmates' radio signals. (Id.) SIS Sy further stated: "I have concluded the investigation on 4/13/07 at 1600 hours and determined this inmate's possession of the transmitter has the potential of interfering with or disrupting the orderly running of the institution, and compromising the inmate's personal safety and welfare if he was discovered." (Id.) The Incident Report was forwarded to Lieutenant Dunham who delivered it to Petitioner on April 14, 2007. (Id.)

On April 14, 2007, Lieutenant Dunham completed a form indicating that he began an investigation on April 14, 2007, that he advised Petitioner of the right to remain silent, and that he had memoranda from officers Benavides, facility electrician M. Mallory, and Sergeant Roth as well as photos of the device. (Id. (Doc. No. 17-2, p.6)) Lieutenant Dunham further stated that: "After review of the Incident Report and interview of...[Petitioner], it is this investigators [sic] conclusion that he did commit the prohibited act, this conclusion is based on inmate Juda admitting to SIS Lt. K. Sy that he did have the FM transmitter and he had prior experience working on marine radios, which allowed him to jam other inmates [sic] signals." (Id.) Lieutenant Dunham referred the matter to the Unitary Disciplinary Committee (hereinafter "UDC"). (Id.)

1    The UDC conducted a hearing on April 18, 2007.  (Answer, Ex. 3, ¶7 & Att. A
2 (Doc.No. 17-2, p.5)) "The UDC referred the matter to the DHO due to the serious nature of
3 the offense- Code 199 Greatest Category of violation." (Answer Ex. 3, ¶7 & Att.A (Doc. No.
4 17-2, p.5))  A hearing was held before the DHO on May 17, 2007.  (Answer, Ex. 3, ¶8)
5 Petitioner's assigned staff representative Unit Manager Kolb appeared at the hearing, made
6 a statement on Petitioner's behalf, and also submitted a written statement.  (Id. at ¶10)
7 Petitioner also testified at the hearing.  (Id.)  Petitioner was advised that he could call
8 witnesses at the hearing and he chose not to do so. (Answer, Ex.3, Att.A (Doc.No. 17-2,
9 p.15))  DHO Logan found Petitioner in violation of the lesser prohibited act of Code 305
10 "possession of anything not authorized" and imposed sanctions of "13 days loss of Good
11 Conduct Time, and 15 days of Disciplinary Segregation.  These sanctions were within the
12 maximum sanctions that could have been imposed for this offense-Code 305." (Answer, Ex.
13 3, ¶¶11-12 (*citing* 28 C.F.R. §541.13, Table 3); *see also* Answer, Ex. 3, Att.A (Doc. No. 17-
14 2, pp.2-4))

15    After unsuccessfully appealing the DHO's determination, Petitioner filed the instant
16 action.  (Answer, pp. 3-4)

17 **II.    DISCUSSION**

18    The Due Process Clause of the Fifth and Fourteenth Amendments applies to prisoners.
19 *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974); *Haines v Kerner,* 404 U.S. 519 (1972).
20 However, "the fact that prisoners retain rights under the Due Process Clause in no way
21 implies that these rights are not subject to restrictions imposed by the nature of the regime
22 to which they have been lawfully committed."  *Wolff,* 418 U.S. at 556.  Therefore, even
23 though a prisoner facing a disciplinary hearing is not entitled to the full array of due process
24 rights that a defendant possesses in a criminal prosecution, he is nonetheless entitled to
25 certain minimum procedural protections before he may be deprived of good time credits. *Id.*
26 at 556, 571 n.1.  The Supreme Court has established five procedural safeguards with respect
27 to a prison disciplinary hearing wherein the prisoner may be deprived of his good time
28 credits: (1) the inmate must receive written notice of the infraction at least 24 hours before

1  the disciplinary hearing; (2) the inmate must receive a written statement by the fact finder as
2  to the evidence relied upon and the reasons for any disciplinary action; (3) the inmate must
3  receive the opportunity to call witnesses and present documentary evidence; (4) the inmate
4  is entitled to assistance in preparing and presenting a defense to the disciplinary charge; and
5  (5) the inmate is entitled to an impartial decisionmaker.  *Id.* at 563-570.

6        In recognizing that a prisoner "has a strong interest in assuring that the loss of good
7  time credits is not imposed arbitrarily," the Supreme Court announced that the requirements
8  of due process are satisfied if, in addition to the safeguards enunciated in *Wolff,* "some
9  evidence supports the decision of the disciplinary board to revoke good time credits."
10 *Superintendent, Massachusetts Correctional Inst, Walpole v. Hill,* 472 U.S. 445, 455 (1985)).
11 Under this standard, the record must not be "so devoid of evidence that the findings of the
12 disciplinary board were without support or otherwise arbitrary."  *Id.* at 457. *See also Cato*
13 *v. Rushen*. 824 F.2d 703, 705 (9th Cir. 1987) ("The *Hill* standard is minimally stringent" and
14 requires consideration of whether "there is *any* evidence in the record that *could* support the
15 conclusion reached by the disciplinary board.") (emphasis in original).  In examining the
16 record under *Hill,* the court is not to make its own assessment of the credibility of the
17 witnesses or to reweigh the evidence.  *Cato,* 824 F.2d at 705.  Moreover, the Constitution
18 does not require evidence that logically precludes any conclusion but the one reached by the
19 board. *Hill,* 472 U.S. at 457.  "Although `some evidence' is not much, and obviously ranks
20 far below what would be sufficient in a criminal or civil trial, it still must point to the
21 accused's guilt." *Lenea v. Lane,* 882 F.2d 1171, 1175 (7th Cir. 1989) (affirming reversal of
22 prison disciplinary action because there was not even a modicum of evidence that inmate was
23 guilty).  The Ninth Circuit has held that "there must be some indicia of reliability for the
24 information that forms the basis for prison disciplinary actions." *Cato,* 824 F.2d at 705.

25       Herein, Petitioner: (1) received advance written notice of the charges against him
26 more than 24 hours before his appearance before the DHO; (2) exercised his right to request
27 assistance from a staff representative, who did in fact raise issues and made a statement on
28 Petitioner's behalf; (3) was afforded the opportunity to call witnesses and to present

evidence; and (4) was permitted to make a statement on his own behalf. The record also supports the conclusion that Petitioner received an impartial hearing. Petitioner makes no claim to the contrary. Procedural due process as defined in *Wolff* was afforded to Petitioner.

Substantial evidence supports DHO Logan's decision. DHO Logan relied upon the evidence summarized in his report including: the Incident Report written by SIS Lieutenant K. Sy; the investigative report written by Lieutenant Dunham; a memorandum from Sgt. Roth describing, *inter alia,* how Petitioner demonstrated the device for Lieutenant Hammons; a memorandum from Officer Benavides documenting his discovery of the device in Petitioner's laundry bag; photographs of the device; and Petitioner's statements to officers and during the hearing. (Answer, Ex. 3, Att.A (Doc. No. 17-2, pp.3-4)) Respondent also points out that "DHO Logan's reduction of the prohibited act from a 100 incident report (Greatest Category) to a 300 level incident report (Moderate Category) demonstrates his careful consideration of the allegations and the evidence. In fact, DHO Logan's decision to reduce Petitioner's allegation to a Moderate Category violation is precisely the resolution Petitioner requested at his hearing if DHO Logan did not dismiss the allegation." (Answer, p. 7) Respondent further asserts that the sanctions of loss of good time credits and disciplinary segregation imposed by DHO Logan are presumptively reasonable because they fall within the range of sanctions available for the 300 level series of offenses, which include forfeiture of good time credit up to 30 days and disciplinary segregation up to 15 days. (Id. (*citing* 28 C.F.R. §541.13, Table 3))

Petitioner takes specific issue with Respondent's alleged non-compliance with 28 C.F.R. §541.14 which addresses "Incident report and investigation." Petitioner argues that Lieutenant Hammons handled the matter "informally" and that an incident report was not issued within the time specified in the regulation.

Section 541.14 provides that "[e]xcept for prohibited acts in the Greatest or High Severity Category, the Lieutenant..." may resolve the matter informally. 28 U.S.C. §541.14(a). However, "[o]nly the DHO may make a final disposition on a prohibited act in the Greatest Severity Category...." *Id.* Petitioner was charged with Code 199 violation, an

1 offense in the Greatest Severity category. *See* 28 C.F.R. §541.13, Table 3 (regarding
2 prohibited acts and disciplinary severity scale). Consequently, a Lieutenant such as
3 Lieutenant Hammons could not resolve the matter informally.

4 Section 541.14 also requires that when staff considers informal resolution
5 inappropriate, "staff shall prepare an Incident Report and promptly forward it to the
6 appropriate Lieutenant." 28 U.S.C. §541.14(a). However, the investigation shall be
7 suspended "[w]hen it appears likely that the incident may be the subject of criminal
8 prosecution..." 28 U.S.C. §541.14(b)(1). Once the investigation commences, "[t]he
9 investigating officer (Bureau of Prisons) shall give the inmate a copy of the Incident Report
10 at the beginning of the investigation...." 28 U.S.C. § 541.14(b)(2). Herein, prior to issuance
11 of the Incident Report, Respondent first took time to determine whether the matter was
12 subject to criminal prosecution. Once Respondent determined not to pursue criminal
13 prosecution, an Incident Report was prepared and forwarded to Lieutenant Dunham.
14 Thereafter, an investigation ensued and the determination was made to refer the matter to the
15 Unitary Disciplinary Committee for action which ultimately resulted in DHO Logan's
16 determination to hold Petitioner responsible for a lesser offense, to revoke 13 days of good
17 time credit, and to impose disciplinary segregation for a period of 15 days. Petitioner
18 received a copy of the Incident Report, on April 14, 2007, one day after SIS Sy prepared it
19 and well in advance of the hearing before the DHO. The instant record does not support the
20 conclusion that Respondent's conduct violated section 541.14 or otherwise deprived
21 Petitioner of due process.

22 **III.    CONCLUSION & RECOMMENDATION**

23 For the foregoing reasons, the Magistrate Judge recommends that the District Court
24 deny Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. No. 3).

25 Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within
26 ten days after being served with a copy of this Report and Recommendation. A party may
27 respond to another party's objections within ten days after being served with a copy thereof.
28

1  Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number:
2  CV 07-1982-PHX-JAT.

3  Failure to file timely objections to any factual or legal determination of the Magistrate
4  Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See*
5  *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S.
6  900 (2003).

7  DATED this 27th day of February, 2009.

```
                    _____
                         Héctor C. Estrada
                    United States Magistrate Judge
```